```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

- - - - - - - - - - - - - - - - -- - - - - - X

```
THEODORE KING and GARY LA BARBERA,
Trustees of Local 282 International
Brotherhood of Teamsters Welfare, Pension,    MEMORANDUM AND
Annuity, Job Training and Vacation/Sick       ORDER
Leave Trust Funds,
                                              CV 00-0449 (MDG)

                        Plaintiffs,

            - against -

C.A.C. INDUSTRIES, INC.,

                        Defendant.
```

- - -- - - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

     Plaintiffs THEODORE KING and GARY LA BARBERA, Trustees of Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds ("plaintiffs") bring this action against defendant C.A.C. INDUSTRIES, INC. ("CAC") to collect fringe benefits CAC failed to pay in violation of 29 U.S.C. §§ 1132 and 1145 and 29 U.S.C. § 185. After defendant moved for summary judgment, plaintiff cross moved for partial summary judgment. The parties have consented pursuant to 28 U.S.C. § 636(c) to having me hear all matters in this action.

## BACKGROUND

     The facts pertinent to these motions are set forth in the affidavit of Michael Capasso, President of defendant CAC, in support of Defendant's Motion for Summary Judgment ("Capasso Aff.")

(DE 24); the declaration of Theresa Cody, an employee of the Funds in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiffs' Cross Motion for Partial Summary Judgment ("Cody Decl.") (DE 22), and the affidavit of Michael Capasso in Support of the Motion for Summary Judgment and in Opposition to the Cross Motion for Partial Summary Judgment (to be docketed).

These following facts are undisputed, except as otherwise indicated.

The Applicable Agreements

Plaintiffs Theodore King and Gary La Barbera are the Trustees of the Local 282 Welfare Fund, the Pension Fund, the Annuity Fund and the Job Training and Vacation and Sick Leave Trust Fund (collectively, the "Funds"). See Cody Decl. ¶ 4. The Funds are multi-employer employee benefit plans that were established pursuant to the terms of various collective bargaining agreements ("CBAs") between Building Material Teamsters Local 282 and various employers who are required to make contributions to the Funds on behalf of their employees covered by the CBAs. See id. ¶ 2. The Funds are administered by the eight trustees, including the two named plaintiffs in this action, and are operated pursuant to the terms of the Agreements and Declarations of Trust between Local 282 and employers who have signed a collective bargaining agreement ("CBA) with Local 282 (the "Trust Agreement"). See Cody Decl.

¶¶ 4-5, Exh. A.

The Trustees seek in this action to collect certain contribution due to the Funds under two collective bargaining agreements ("CBAs") between Local 282 and the General Contractors Association of New York, Inc., of which defendant CAC is a member. Capasso Aff. ¶ 2.[1]  Under the CBAs, employers are required to make contributions to the Funds at a specified rate for each hour worked during the regular work-week, up to a maximum of forty (40) hours per week.  See §§ 13(A), (B) and (E) of the applicable CBAs; Capasso Aff. ¶ 2, Exhs. 1, 2.  The contributions paid by defendant and other employers bound under similar collective bargaining agreements are deposited into a trust administered pursuant to the Trust Agreement.  See Cody Aff. ¶ 5.

As recognized in the CBAs, the agreements are designed to provide "maximum employment for the Employees of the Employer within the industry-wide collective bargaining unit covered by the Agreement ... [and] for the further purpose of protecting the job security, wages and other standards of employment established in this industry ..."  CBAs § 6, first par.  In Section 8, which is

---

[1] Copies of the 1993-1996 and 1996-1999 CBAs at issue here are attached as Exhs. 1, 2, respectively, to Capasso Aff. Since the pertinent provisions in the two CBAs are virtually identical, except for different time periods and wages and contribution rates, this Court will refer to the provisions of both agreements jointly.  Although plaintiffs allege that CAC signed the CBAs, Compl. ¶ 8, the only CBAs submitted to the Court clearly were signed by the General Contractors Association of New York. Capasso Aff., Exh. 1 at 31, Exh. 2 at 29.

-3-

entitled "Work Preservation," employers are prohibited from disposing of trucks, except under certain conditions, and from "hir[ing] outside trucks or equipment unless all his available suitable trucks and equipment are in use." Id. §§ 6(A), 6(C), 6(D). Where work is subcontracted by an employer or subcontractor on the site, the employer is required to submit "monthly reports of all hours worked for each Employee, in all classifications covered by this Agreement, whether that work is performed by an Employee of the Employer or an Employee of a subcontractor or any subcontractor of a subcontractor." CBAs § 7(A). In addition, the employer must notify the "Funds, on a weekly basis, of the identity of the supplier, the number of trucks supplied and the hours of work involved for each truck" and is obligated to CBAs § 6(D). If a subcontractor or subcontractor of a subcontractor fails to make requisite contributions to the Funds or if a supplier of trucks fails to pay requisite wages or benefits, the employer is liable for payment. See CBAs §§ 6(D), 7(B).

Section 6(D) of the CBAs requires employers who do not have any or enough trucks or equipment to hire trucks and equipment only from suppliers who provide wages and working conditions comparable to the terms under the CBA and states as follows:

> The Employer shall not hire outside trucks or equipment unless all his available suitable trucks and equipment are in use. Thereafter, the Employer shall hire only from others whose drivers receive wages, working conditions, benefits and standards of employment at least as favorable as those contained herein. The Employer shall notify the Local 282 Welfare, Pension, Annuity &

>     Job Training Funds, on a weekly basis, of the identity of
>     the supplier, the number of trucks supplied and the hours
>     of work involved for each truck.  If the Union, by an
>     officer, by written notice with report of delivery,
>     notifies the Employer that a truck or equipment supplier
>     is not complying, the Employer shall be responsible for
>     such non-compliance for the period only beginning two (2)
>     working days after the day of receipt of such notice . .
>     . .

Capasso Aff. ¶ 3, Exhs. 1, 2.

Section 13 requires that contributions be made into four specified benefit funds, including the three Funds joined herein as plaintiffs.  The provisions for the Welfare Fund, the Pension Fund and the Job Training Fund set forth in §§ 13(A), 13(B) and 13(E) of the CBAs require contributions at a specified rate "for each hour worked under this Agreement, during the regular work-week (Monday-Friday), up to a maximum of forty (40) hours."  Id.

The July 1995 payment to the Funds

CAC is a signatory to the applicable CBAs.  See Cody Decl. at ¶ 11.  In December 1994, defendant CAC rented a truck without a driver to another company.  See Capasso Aff. ¶ 6.  On a shop steward report for hired trucks for the week of December 12, 1994, the driver of the truck, Junior Walfall, was listed as having worked eight hours on December 16, 1994 and CAC was listed in the column for "Equipment Truck Rental Company."[2]  Id. ¶ 15.  After

---

[2] Shop steward reports are compiled at a job site where a Local 282 shop steward is present in order to ensure that the applicable Local 282 CBAs are being followed.  See Cody Decl. ¶ 13. The shop steward generally has each driver reporting to a
(continued...)

the other company using defendant's truck failed to pay benefits to the Funds for the driver, Junior Walfall, plaintiffs demanded by letter dated June 29, 1995, that CAC pay the contributions due for this one day.  See Capasso Aff. ¶¶ 6-7, Exh. 3; Cody Decl. ¶ 14, Exh. D.  Plaintiffs' position is that they believed Junior Walfall to be a CAC employee, since his name was listed on a Shop Steward Report.  See Cody Decl. ¶ 14, Exh. E.

In response, defendant explained in a letter dated July 13, 1995 that CAC rented their truck, without a driver, to another company and that Junior Walfall was not employed by CAC.  See Capasso Aff. ¶ 8, Exh. 4; Cody Decl. ¶ 16, Exh. F.  Nonetheless, CAC subsequently sent the Funds checks for the benefits due and plaintiffs cashed the checks.  See Capasso Aff. ¶ 8; Cody Decl. ¶ 16.

The Joint Venture

Around April 1995, defendant CAC entered into a joint venture with A.F.C. Enterprises, Inc. for work to be done at the USTA Tennis Center (the "Joint Venture").  See Capasso Aff. ¶ 12.  The Joint Venture is also a party to a collective bargaining agreement with Local 282.  See Cody Decl. at ¶ 11.  CAC supplied the trucks

---

[2](...continued)
particular job site sign in and identify himself.  Id.  Relying on the shop steward report, plaintiffs contend that Mr. Walfall was a CAC employee, while defendant contends the driver was hired by the company renting the truck.  Compare Cody Decl. ¶ 14, Exh. E; Capasso Aff. ¶ 6.

and equipment to the Joint Venture, since the Joint Venture did not own any trucks or equipment.  Id.  According to defendant, the benefits for the Funds were initially not paid by the Joint Venture because defendant believed that CAC was responsible for the payment of the drivers' benefits, as the supplier of the trucks and equipment.  Id. at ¶¶ 12-13.

When the general contractor of the USTA Tennis Center job asked that the men on the job be employed by the Joint Venture for insurance reasons, the Joint Venture agreed.  See Capasso Aff. at ¶ 14.  On June 14, 1996, the Joint Venture entered into a CBA with Local 282.  See id. at ¶ 14, Exh. 7.  The Joint Venture subsequently paid the contributions for the drivers working for the Joint Venture.  See Capasso Aff. ¶ 19.

While CAC was part of the Joint Venture, it also engaged in its own separate projects.  See Capasso Aff. at 5, n. 2.  Some drivers worked interchangeably on CAC projects and the Joint Venture project and, on many weeks, the total hours worked by certain drivers exceeded 40 hours a week.  See id.  Mr. Capasso stated that the Joint Venture assumed that all contributions paid for a driver who would be counted towards the forty hour limit irrespective of whether the driver was employed by CAC or the Joint Venture, in light of plaintiffs' prior position that CAC remained liable for contributions owed for work by drivers using CAC trucks. See id. at ¶ 15.

DISCUSSION

Summary judgment is appropriate pursuant to Fed. R. Civ. P. 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d Cir. 1991) (citations omitted). The moving party bears the initial burden of demonstrating an absence of material facts and once it has done so, the burden shifts to the non-moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether there is a genuine issue of material fact, the court must resolve ambiguities and draw inferences in favor of the non-moving party. See id. at 330 n.2; Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc., 996 F.2d 537, 542 (2d Cir. 1993). A party opposing summary judgment must present "significant probative" supporting evidence that a factual dispute exists. See Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The main issue raised in the motions is whether the 40 hour weekly cap on contributions required to paid under Section 13 of the CBAs should be separately calculated for the employees paid by CAC under Section 6(D), as a supplier of equipment, and for the employees of the Joint Venture, or whether CAC may combine those hours with the hours worked by the same workers performing work for

CAC and for the Joint Venture.  Besides disputing the plaintiffs' interpretation of the CBAs, defendant argues that plaintiffs are equitably estopped from denying that the contributions made by defendant and the Joint Venture should be combined under a single cap.

Equitable Estoppel

CAC contends that because plaintiffs previously found CAC liable for contributions owed for a driver of its truck leased to another company, plaintiffs are estopped from not crediting CAC for contributions made for drivers who worked for the Joint Venture using CAC vehicles.  As plaintiffs correctly observe, CAC failed to plead equitable estoppel as an affirmative defense as required by Rule 8(c) of the Federal Rules of Civil Procedure.  See Plaintiffs' Memorandum of Law in Opposition to Defendant's motion for Partial Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment (DE 20) at 11.  A failure to plead estoppel or any of the other affirmative defenses listed in Rule 8(c) generally results in waiver.  National Market Share, Inc. v. Sterling Nat. Bank, 392 F.3d 520, 526 (2d Cir. 2004).  Since CAC has not offered any reason why it did not raise this defense earlier, this defense is waived.  Cf. Rose v. Amsouth Bank of Florida, 391 F.3d 63, 65 (2d Cir. 2004) (district court may entertain unpleaded affirmative defense that would not have been "'pragmatically possible'" to raise earlier, provided there is no

-9-

undue prejudice, bad faith, futility and undue delay) (citations omitted).

In any event, this defense is meritless. The doctrine of equitable estoppel will apply in the ERISA context only where "extraordinary circumstances" exist. See Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 78 (2d Cir. 1996). In addition to proving extraordinary circumstances, a party must establish all three elements of equitable estoppel: "(1) material misrepresentation, (2) reliance and (3) damage." Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993) (citing Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 (3d Cir. 1991)); see Bonovich v. Knights of Columbus, 146 F.3d 57, 62 (2d Cir. 1998) (citing the virtually identical elements of promissory estoppel); Berg v. Empire Blue Cross and Blue Shield, 105 F. Supp. 2d 121, 129 (E.D.N.Y. 2000) (citing elements of equitable estoppel).

Defendant points to no affirmative misrepresentation made by plaintiffs. At most, there was a misunderstanding over the reason why plaintiffs found defendant liable for contributions for Mr. Westphal's services, a dispute arising from different views as to whether he was an employee of CAC. See Lee, 991 F.2d at 1010 (equitable estoppel not applied where there was confusion as to which company actually insured plaintiff, rather than an affirmative misrepresentation); Herter v. Dick's Clothing & Sporting Goods, Inc., 58 F. Supp.2d 306, 312 (S.D.N.Y. 1999) (equitable estoppel not applied where proof of misrepresentation

was statement that employer provided "very good coverage").

Moreover, CAC had the right to challenge the plaintiffs' finding that Mr. Westphal was a CAC employee and that CAC had violated the CBA under Section 9 of the CBA. Rather than availing itself of the available dispute resolution procedures, CAC simply acquiesced to plaintiffs' demand for payment and sent a letter stating that Mr. Westphal was not an employee, but enclosing the the payments for contributions demanded. See Capasso Aff. ¶¶ 7-10, Exhs. 4, 6. Such circumstances hardly amount to reliance on the part of defendant, let alone reasonable reliance.

Even if CAC has sufficiently established misrepresentation and reliance, mere reliance is not enough to satisfy the "extraordinary circumstances" requirements applicable to any defense of equitable estoppel in this ERISA case. See Patterson v. J.P. Morgan Chase & Co., No. 01 Civ. 7513 (JSM), 2002 WL 207123 at *6 (S.D.N.Y. Feb. 11, 2002). The "'extraordinary circumstances' necessary to equitable estoppel in the context of an ERISA plan require conduct tantamount to fraud." Greifenberger v. Hartford Life Ins. Co., 131 F. App'x 756, 759 (2d Cir. 2005) (citing Devlin v. Transportation Communications Int'l Union, 173 F.3d 94, 101-102 (2d Cir. 1999)). No such conduct is alleged here.

40 Hour Cap Provision

Both parties rely on various provisions of the CBAs as support for their respective positions as to operation of the 40 hour cap

-11-

and its applicability here.  It is well settled that "[w]hen courts interpret CBAs, traditional rules of contract interpretation apply as long as they are consistent with federal labor policies." Aeronautical Indus. Dist. Lodge 91 of the Int'l Assoc. of Machinists and Aerospace Workers, AFL-CIO v. United Tech. Corp., 230 F.3d 569, 576 (2d Cir. 2000); see King v. Plan It Constr. & Equip. Co., 179 F. Supp.2d 71, 75 (E.D.N.Y. 2002).  In interpreting a contract, courts must "give effect to the intent of the parties as revealed by the language of the agreement."  Tr. of the Bricklayers and Allied Craftworkers v. Charles T. Driscoll Masonry Restoration Co., 165 F. Supp.2d 502, 510 (S.D.N.Y. 2001).

As noted by defendant, the intent of Section 6(D) may simply be to ensure the payment of benefits to the Funds should an employer need to hire outside trucks or equipment.  To achieve this goal, Section 6(D) holds the supplier/owner of the equipment primarily responsible for payment obligations for the employees operating that equipment.  The employer then becomes responsible for the payment of such benefits only upon notice that the owner of the equipment has not complied with the CBA.  Similarly, under Section 7(B) governing the payment of contributions for subcontracted work, the subcontractor is responsible, but the employer is liable if the subcontractor does not comply.  CAC is thus primarily liable for contributions when it is a supplier of equipment or a subcontractor and, as defendant notes, when it is paying for work performed by its employees when it is engaged in

-12-

its own projects, some of whom may perform work for the Joint Venture.

The obligations of employers to make contributions under the CBAs are set forth in five different provisions of Section 13. CAC argues that since it is primarily liable for contributions as a supplier under Section 6(D), it should not be subject to two separate 40 hour limits for contributions required by Sections 13(A), 13(B) and 13(E) for both its employees working for it and for the same employees working for the Joint Venture. As defendant points out, a primary purpose of Section 13 is to insure that each employee receive welfare benefit contributions for up to 40 hours worked each week. However, the determination of the issue depends on an interpretation of the language of the CBAs here. The issue in this case arises because CAC has employees who are also employed by the Joint Venture. However, it is undisputed that both CAC and the Joint Venture have separately entered the relevant CBAs. Thus, they are each "[t]he Employer" under the various provisions of the respective CBAs each signed. Nothing in the language or structure of the CBAs suggests that "Employer" encompasses affiliated entities. It makes little sense to treat employees who work for two different, unrelated employers differently from employees who happen to work for two separate, but affiliated employers.

Thus, I find that the term "Employer" in Sections 13(A), and 13(B) and 13(E), which direct "[t]he Employers" to make contributions at a specified rate "for every hour paid for, up to a

maximum of forty (40) hours per Employee per week" means each employer that signs an applicable collective bargaining agreement. Accordingly, the limits the 40 hour cap on contributions required to be paid must be calculated separately for each employer under its respective agreement.

Also, as plaintiffs point out, because these provisions refer to "the Agreement," employers are covered under their respective agreements and hence, two employers would each be subject to a 40 hour cap under their respective agreements.

Thus, I find that Section 6(D) is subject to the 40 hour cap for work per employee as contained in Sections 13(A), 13(B) and 13(E).

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied and plaintiff's motion for partial summary judgment is granted.

**SO ORDERED.**

Dated: Brooklyn, New York
October 17, 2018

/s/
MARILYN DOLAN GO
UNITED STATES MAGISTRATE JUDGE